Clerk of the Superior Court
*** Electronically Filed ***
A. Marquez, Deputy
7/19/2022 4:56:00 PM
Filing ID 14581190

FENNEMORE CRAIG, P.C.
Christopher L. Callahan (No. 009635)
Lyndsey M. Maasch (No. 035548)
2394 E. Camelback Road
Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: ccallahan@fennemorelaw.com
Email: sstrunk@fennemorelaw.com
Email: lmaasch@fennemorelaw.com

Attorneys for Plaintiff
Team 44 Restaurants, LLC

SUPERIOR COURT OF ARIZONA

MARICOPA COUNTY

| | |
|---|---|
| TEAM 44 RESTAURANTS, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SYNERGI PARTNERS, INC., a South Carolina corporation,<br><br>Defendant. | No. **CV2022-009254**<br><br>**COMPLAINT**<br><br>**(Declaratory Relief; Contract)**<br><br>(Commercial Court Assignment Requested) |

For its Complaint against Synergi Partners, Inc. ("Synergi"), Team 44 Restaurants, LLC ("Team 44") alleges as follows:

**PARTIES AND JURISDICTION**

1. Team 44 is an Arizona limited liability company that is authorized to do and doing business in Maricopa County, Arizona.

2. Upon information and belief, Synergi is a South Carolina corporation that entered into a contract in Maricopa County, Arizona, out of which the claims asserted in this Complaint arise.

. . .

3. This Court has both personal jurisdiction over the parties and subject matter jurisdiction over the dispute and venue is proper in Maricopa County.

4. The characteristics of this case are such as to be designated Tier 3 under Rule 26.2(b)(2), Arizona Rules of Civil Procedure.

5. This dispute constitutes a "commercial case" within the meaning of Rule 8.1(a), Arizona Rules of Civil Procedure, and Team 44 respectfully requests its assignment to commercial court.

## GENERAL ALLEGATIONS

6. The Coronavirus Aid Relief and Economic Stimulus Act (the "CARES Act") makes qualified businesses eligible for Employee Retention Tax Credits ("ERTCs") if they retain employees on their payrolls. The maximum ERTC for a qualified business is $28,000 per employee.

7. For the 2021 tax year, a qualified business must reflect any ERTCS claimed for that year in reduced wages paid in its income tax return due on or before April 15, 2022 and must account for such reduced wages in making any estimated tax payments.

8. On or about July 20, 2021, Team 44 entered into a Client Services Agreement (the "Agreement") with Synergi whereby Synergi agreed, among other things, to: (a) identify and determine Team 44's eligibility for any ERTCs; (b) calculate the amount of the ERTCs for Team 44; and (c) "prepare and deliver a Tax Credit Package . . . that includes an eligibility analysis, applicable supporting schedules and a calculation of [ERTCs] based on applicable law." A true and correct copy of the Agreement is attached as **Exhibit 1**.

9. Synergi agreed to charge Team 44 a contingency fee of fifteen percent (15%) based on the amount of ERTCs calculated by Synergi and set forth in the Tax Credit Package. The Agreement sets forth no other bases upon which Synergi would be entitled to compensation.

. . .

10. The Agreement expressly provides that "[e]ither Party may terminate this Agreement for convenience prior to the expiration of the Term by providing written notice." The Agreement further provides that, in the event of such notice, "[t]ermination shall occur fifteen (15) business days after the written notice is served."

11. In the event Team 44 terminates the Agreement without cause, the Agreement obligates Team 44 "to immediately pay all open invoices for Services rendered as of the date of termination and [to] pay future invoices for any work in progress upon receipt of an invoice for such Services."

12. In the event Team 44 terminates the Agreement with cause on the basis of Synergi's material breach of the Agreement, Team 44 is excused from any and all duties of counterperformance and owes nothing to Synergi.

13. The Agreement contains an implied covenant of good faith and fair dealing whereby both Team 44 and Synergi would act in good faith toward one another and neither would act in a manner that would deprive the other of the anticipated benefits of the Agreement.

14. After entering into the Agreement, Team 44 provided the information necessary for Synergi to calculate the ERTCs to which Team 44 was entitled on or before November 30, 2021.

15. Following the delivery of this information to Synergi, Team 44 followed up on a regular, consistent and ongoing basis with Synergi regarding the status of Synergi's analysis. In response to these inquiries, Synergi responded only that its "data operations" department was "in the process of reviewing the provided payroll data" and that Synergi was waiting for "data operations" to complete its analysis.

16. When Team 44 asked for an estimated date by which Synergi would complete its analysis on January 31, February 23, and March 23, 2022, Synergi responded that it did

"not have an estimated date for completion at this time," indicating that Synergi was still waiting for "data operations" to complete its analysis.

17. Synergi's failure and refusal to conduct and conclude its analysis of Team 44's entitlement to ERTCs and its calculation of any ERTCs to which Team 44 would be entitled in a timely fashion is a material breach of its express and implied obligations under the Agreement.

18. Synergi's failure and refusal to communicate meaningfully with Team 44 about the status of its analysis and calculation of the ERTCs to which Team 44 would be entitled is a material breach of its express and implied obligations under the Agreement.

19. On or about April 1, 2022, Team 44 sent a Notice of Termination to Synergi in which Team 44 "notifie[d] Synergi that it is terminating the . . . Agreement . . . because of Synergi's consistent failure to timely and properly communicate and perform the expected Services under the . . . Agreement." Team 44 directed Synergi "to immediately halt providing any and all further Services (if any) to Team 44 upon receipt of this Termination Notice." A true and correct copy of the Termination Notice is attached as **Exhibit 2**.

20. On or about April 2, 2022, Synergi acknowledged receipt of Team 44's Notice of Termination, but refused to comply with Team 44's stop work directive, stating that Synergi would "continue working towards completing all work in process and deliver your tax credit package upon completion, per the terms of our agreement." A true and correct copy of Synergi's April 2, 2022 email is attached as **Exhibit 3**.

21. On or about April 4, 2022, Team 44 responded to Synergi's April 2 acknowledgment, addressing Synergi's stated intent to disregard the stop work directive and reiterating, "You have been advised to stop work now. We will not pay for any further work. Thank you." A true and correct copy of Team 44's April 4, 2022 email is attached as **Exhibit 4**.

22. Upon information and belief, Synergi failed and refused to comply with Team 44's stop work directives in both the Termination Notice and the April 4, 2022 email, and instead either commenced or continued the analysis necessary to determine Team 44's eligibility for ERTCs and to calculate the amount of such ERTCs in violation of the stop work directives.

23. Synergi's failure and refusal to comply with Team 44's stop work directive is a material breach of its express and implied obligations under the Agreement.

24. As of April 15, 2022, Synergi had not provided any information to Team 44 regarding Team 44's entitlement to ERTCs or the amount of ERTCs to which Team 44 would be entitled.

25. Because Team 44's federal and state income tax returns were due to be filed on April 15, 2022 and because Team 44 needed information regarding the magnitude of ERTCs to which it was entitled in order to make its estimated tax payments, Team 44 engaged its accounting firm to provide an estimate of the ERTCs so that Team 44 could file its returns and make its estimated tax payments.

26. Despite Team 44's Termination Notice and stop work directive, upon information and belief, Synergi continued to perform work pursuant to the now-terminated Agreement and delivered the Tax Credit Package to Team 44 on or about May 3, 2022.

27. Consistent with its termination of the Agreement, Team 44 has not reviewed or considered any component of the Tax Credit Package provided by Synergi.

28. Because of Synergi's failure to communicate reasonably with Team 44 and to respond to Team 44's inquiries, Team 44 has lost confidence in Synergi's ability to assess accurately Team 44's entitlement to ERTCs and its calculation of any ERTCs to which Team 44 may be entitled.

29. Because of Synergi's material breach of the Agreement, it is not entitled to rely on any of the provisions thereof.

30. Because this claim arises out of contract within the meaning of A.R.S. § 12-341.01, upon prevailing herein, Team 44 will be entitled to an award of its reasonable attorneys' fees.

## COUNT ONE – BREACH OF CONTRACT

31. Team 44 incorporates the preceding allegations of the Complaint as though fully set forth herein.

32. Up through and including its termination of the Agreement on or about April 1, 2022, Team 44 has fulfilled its obligations under the Agreement.

33. Synergi has failed to perform its obligations under the Agreement in a timely and professional manner as set forth above and, as a result, has materially breached the Agreement.

34. Team 44 has been proximately damaged by Synergi's material breaches of the Agreement in an amount to be proven at trial.

## COUNT TWO – DECLARATORY RELIEF

35. Team 44 incorporates the preceding allegations of the Complaint as though fully set forth herein.

36. Team 44 is a "person" interested in a written contract, whose rights, status and legal relations are affected by a written contract within the meaning of A.R.S. §12-1832.

37. As such, Team 44 is entitled to "have determined any question or construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder."

38. The declaratory relief sought by Team 44 would terminate the uncertainty and controversy between Team 44 and Synergi regarding their respective rights and obligations under the Agreement.

. . .

WHEREFORE, Team 44 respectfully requests the Court to enter judgment in its favor and against Synergi as follows:

A. Awarding to Team 44 compensatory damages sufficient to fully compensate Team 44 for Synergi's material breaches of the Agreement in an amount to be proven at trial;

B. Granting declaratory relief that:

(1) Synergi failed to perform its obligations under the Agreement in a diligent and timely manner and this failure constitutes a material breach of the express and implied terms of the Agreement by Synergi;

(2) Synergi failed to communicate reasonably with Team 44 regarding the progress of its work under the Agreement and to provide information requested by Team 44, and this failure constitutes a material breach of the express and implied terms of the Agreement by Synergi;

(3) Team 44 properly terminated the Agreement for cause on or about April 1, 2022 on the basis of Synergi's prior material breaches of the Agreement;

(4) Team 44 properly directed Synergi to stop performing work under the Agreement on or about April 1, 2022 on the basis of Synergi's prior material breaches of the Agreement;

(5) Synergi had no open invoices for services rendered under the Agreement as of April 1, 2022;

(6) Team 44 has no obligation to make payment to Synergi under the Agreement on account of Synergi's material breaches thereof; and

(7) Synergi may not rely upon any provisions of the Agreement, including but not limited to those provisions relating to "Limitation of Liability"

or "Governing Law" on the basis of its material breaches of the Agreement.

C. Awarding to Team 44 its taxable costs pursuant to A.R.S. §12-341;

D. Awarding to Team 44 its reasonable attorneys' fees pursuant to A.R.S. §12-341.01;[1]

E. Granting such additional relief as the Court deems appropriate.

DATED this 19th day of July, 2022.

                                FENNEMORE CRAIG, P.C.

                        By: */s/ Christopher L. Callahan*
                            Christopher L. Callahan
                            Lyndsey M. Maasch
                            Attorneys for Plaintiff
                            Team 44 Restaurants, LLC

27114559.1

---

[1] In the event that Synergi were to prevail in this litigation, it could not rely on A.R.S. § 12-341.01 because a finding in favor of Synergi would not be possible unless the Court concludes that Synergi did not breach the Agreement. Such a conclusion would mandate the corollary conclusion that the Agreement remains in force. The Agreement provides that it "shall be governed and construed in accordance with the laws of South Carolina." This provision, if applicable, would mean that Section 12-341.01 does not govern the award of fees to the prevailing party.

# EXHIBIT 1

CONFIDENTIAL



**CLIENT SERVICES AGREEMENT**

This Client Services Agreement (the "Agreement") is dated as of __7/20/2021__, 2021 (the "Effective Date") between Synergi Partners Inc., a South Carolina corporation ("Synergi"), and _TEAM 44 RESTAURANTS LLC_____, a _LLC_____ ("Client"). Client and Synergi are each individually referred to herein as a "Party" and collectively as the "Parties."

**SCOPE OF ENGAGEMENT; SERVICES.** Client hereby engages Synergi to perform the following services (the "Services"), and Synergi agrees to use commercially reasonable efforts to perform the Services, pursuant to the terms of this Agreement.
1. Identify and determine eligibility for any Employee Retention Tax Credits ("ERTC") provided for in the Coronavirus Aid Relief and Economic Stimulus Act ("CARES Act") or any other COVID-19-related legislation which may be available to Client (collectively the "Credits")
2. Gather applicable Client Data (i.e payroll data, employer healthcare costs, etc.) from Client to calculate Credits;
3. Calculate Credits for Client;
4. Prepare and deliver a Tax Credit Package to Client that includes an eligibility analysis, applicable supporting schedules, and a calculation of Credits based on applicable law (the "Tax Credit Package"); and
5. Provide internal, external and IRS audit support (as required).

Notwithstanding the foregoing, should any other COVID-19 related credits or incentives become available to Client during the Term of this Agreement, Synergi shall have the right to perform those services pursuant to this Agreement unless Client indicates otherwise in writing.

**TERM.** The term of this Agreement is __1__ year(s) from the Effective Date (the "Term"). Audit Support (defined below) shall survive the term of this agreement.

**TERMINATION.** Either Party may terminate this Agreement for convenience prior to the expiration of the Term by providing written notice. Termination shall occur fifteen (15) business days after the written notice is served. Upon termination of this Agreement, Client shall be obligated to immediately pay all open invoices for Services rendered as of the date of termination and will pay future invoices for any work in progress upon receipt of an invoice for such Services.

**FEES.** Upon the receipt of the Tax Credit Package, Client has the obligation to pay Synergi a _15_ % contingency fee in accordance with the terms of this Agreement based on the amount of Credits calculated for Client and reflected in the Tax Credit Package (the "Fee"). Client's obligation to pay the Fee is not contingent upon Client's ultimate filing and/or use of the Credits. This section shall survive the termination of this Agreement with respect to any work performed prior to termination of this Agreement.

**INVOICES.** Client agrees to pay the Fee associated with each Tax Credit Package in two payments as follows: (1) Client agrees to pay fifty percent (50%) of the Fee upon delivery of the Tax Credit Package to Client; (2) Client agrees to pay the remaining fifty percent (50%) of the Fee ninety (90) days after receipt of the Tax Credit Package. Payment of the Fee is not contingent upon whether the Client ultimately utilizes the Credits calculated by Synergi. Utilization of the Credits is the sole responsibility of the Client. Payments not received within sixty (60) days will bear interest at the rate of 1.5% per month. The Fees do not include applicable taxes and are in US

dollars. This section shall survive the Term of the Agreement.

**REFUND; AUDIT NOTICE.** Synergi will refund any portion of the Fee attributable to Credits disallowed by the appropriate taxing authority, provided, however, Synergi is given reasonable notice of any audit, challenge to the Credits, or other proceeding for review of the Credits and the opportunity to provide support regarding the Client's eligibility for, the validity of and/or amount of the Credits claimed by Client.

**ACCESS; CONFIDENTIALITY.** For the Term of this Agreement, Client grants Synergi reasonable limited access to any information and data necessary to perform the Services (the "Client Data"). **Confidential Information**" means a disclosing Party's non-public written information, in any form, and all copies, summaries and extracts, which are identified as confidential at the time of disclosure, and specifically includes Client Data. Confidential Information does not include information that: (i) is or becomes generally publicly available at the time of disclosure or subsequently through no fault of recipient Party; (ii) was known to recipient Party, free of any confidentiality obligations, before its disclosure by disclosing Party; (iii) becomes known to recipient Party, free of any confidentiality obligations, from a source other than disclosing Party; or (iv) is independently developed by recipient Party without use of the Confidential Information. A recipient Party that receives Confidential Information from a disclosing Party will: (i) use Confidential Information only as necessary to perform its obligations under this Agreement, (ii) handle Confidential Information with the same level of care that it holds its own Confidential Information (but in any event with no less than a reasonable level of care), (iii) disclose Confidential Information to only those third parties (accountants, tax advisors, etc.) who provide services to the Recipient and have previously agreed in writing to protect the Confidential Information to the same extent as required in this Agreement, and (iv) either promptly deliver or promptly destroy (and certify the destruction to the disclosing Party) all of the disclosing Party's Confidential Information and copies in the recipient Party's possession at the disclosing Party's request or at the expiration or termination of this Agreement (except Synergi may maintain all Confidential Information that may be reasonable needed in the event of an audit). Except as may be required by court order or law, a recipient Party's obligations regarding Confidential Information will remain in full force and effect.

**INDEMNIFICATION BY CLIENT AND SYNERGI.** Client agrees to indemnify, defend and hold harmless Synergi, including its directors, officers, employees, and agents from and against all losses, suits, claims, damages (consequential or otherwise), demands, causes of action, liabilities, fines, penalties, costs or expenses of whatever kind or nature arising from errors or omissions in the information Client provides to Synergi. Synergi agrees to indemnify, defend and hold harmless Client, including its directors, officers, employees, and agents from and against all losses, suits, claims, damages (consequential or otherwise), demands, causes of action, liabilities, fines, penalties, costs or expenses of whatever kind or nature arising from an allegation that the Services infringe the copyright or patent of a third party or from Synergi's intentional misconduct. Notwithstanding the foregoing, a Party's maximum amounts owed for indemnification under this Agreement shall not exceed the amount of the Fees actually paid by Client under this Agreement.

**LIMITATION OF LIABILITY.** NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL DAMAGES (EXCLUDING REFUNDS AS DESCRIBED ABOVE), INCLUDING ANY LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION OR SPECIAL DAMAGES, INCIDENTAL, EXEMPLARY, PUNITIVE OR INDIRECT DAMAGES ARISING FROM OR RELATING TO THIS AGREEMENT, REGARDLESS OF HOW CAUSED OR THE THEORY OF LIABILITY PURSUED. THIS LIMITATION SHALL APPLY EVEN IF SUCH PARTY HAS BEEN ADVISED OF OR IS AWARE OF THE POSSIBILITY OF SUCH DAMAGES. NOTWITHSTANDING THE FOREGOING AND WITH THE EXCEPTION OF FEES DUE UNDER THIS AGREEMENT, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY AMOUNTS IN EXCESS OF THE FEES ACTUALLY PAID UNDER THIS AGREEMENT.

**NOTICES.** Any notice required hereunder shall be deemed to have been given upon delivery or deposit with a nationally recognized courier or sent by registered or certified U.S. mail, return receipt requested, postage prepaid, to the other Party at the address set forth at the end of this Agreement.

**AMENDMENT.** This Agreement may be amended in a writing signed by both Parties.

**GOVERNING LAW.** This Agreement constitutes the entire understanding between the Parties regarding the Services and shall be governed and construed in accordance with the laws of South Carolina.

CONFIDENTIAL

**LICENSE TO NAME/LOGO.** Client hereby licenses to Synergi the right to display Client's name or logo on Synergi's website. Synergi will comply with Client's guidelines related to this use and will modify such use upon Company's reasonable request. Synergi agrees that all goodwill associated with its use of Client's name or logo shall inure to Client's benefit. If Client wishes not to grant Synergi a license to use Client's name or logo on Synergi's website, please check here.

**MISCELLANEOUS.** Synergi DOES NOT provide tax advice, tax filings, or CPA services. Synergi is not a tax preparer or accountant and therefore explicitly disclaims any and all responsibility for preparation of a Client's federal and state tax returns. Synergi will not render or be required to render any service that could be interpreted as the practice of accounting.

By their signatures below, the Parties enter this Agreement as of the Effective Date.

| SYNERGI PARTNERS, INC. | TEAM 44 RESTAURANTS LLC |
|---|---|
| Signature: *(DocuSigned by James A. Brown, Jr. — D773B45539AE4A5)* | Signature: *(DocuSigned by keith kinard — 31943D3E24984A5)* |
| Print Name: James A. Brown, Jr. | Print Name: Keith Kinard |
| Title: President / CEO | Title: CFO |
| Contact Information: | Email: keith@primesteakconcepts.com |
| Email Address: tgodfrey@synergipartners.com | Phone: 602-615-4502 |
| Phone: 843-519-0808 | Billing Contact Information: |
| Address: PO Box 5599, Florence, SC 29502 | Billing Contact Name: Sheena Baker |
| | Billing Contact Email: sheena@primesteakconcepts.com |
| | Billing Contact Phone: 480-889-1187 |
| | Billing Contact Mailing Address: 8355 E Hartford Dr Ste 100, Scottsdale, AZ 85255 |

# EXHIBIT 2



**FENNEMORE.**

Sarah A. Strunk
Chair
sstrunk@fennemorelaw.com

2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
PH (602) 916-5327 | FX (602) 916-5527
www.fennemorecraig.com

April 1, 2022

Via Email and Certified Mail, Return Receipt Requested:

Synergi Partners Inc.
PO Box 5599
Florence, SC 29502
Attention: James A. Brown, Jr.
Email: tgodfrey@synergipartners.com

Re: **Notice of Termination**: Team 44 Services Agreement dated July 20, 2021 (the "Services Agreement") by and between Team 44 Restaurants LLC ("Team 44") and Synergi Partners Inc. ("Synergi").

Dear Sir:

We reference the Services Agreement. All capitalized terms used in this letter have the meanings given those terms in the Services Agreement. We represent Team 44.

Pursuant to Page 1 of the Services Agreement, Team 44 hereby notifies Synergi that it is terminating the Services Agreement (the "Termination Notice"). This Termination Notice is being sent because of Synergi's consistent failure to timely and properly communicate and perform the expected Services under the Services Agreement. Synergi is hereby notified to immediately halt providing any and all further Services (if any) to Team 44 upon receipt of this Termination Notice.

If there is any outstanding amounts due for services rendered up to the date of this Termination Notice, Team 44 requests an invoice for consideration. So far, Team 44 has received no invoices for Services rendered as of the date of this letter.

Thank you.

Sincerely,

Sarah A. Strunk

19773041/038294.0003



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $ _____
☐ Return Receipt (electronic) $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required $ _____
☐ Adult Signature Restricted Delivery $ _____
Postage
$
Total Postage
$
Sent To
SYNERGI PARTNERS INC.
ATTN: JAMES A. BROWN, JR.
PO BOX 5599
FLORENCE, SC  29502

Street and
City, State

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7021 0350 0000 8422 7311
7021 0350 0000 8422 7311

S. Strunk/038294.0003

**FENNEMORE.**

2394 E. Camelback Road
Suite 600
Phoenix, Arizona  85016

## USPS Certified Mail Return Receipt (PS Form 3811)

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   SYNERGI PARTNERS INC.
   ATTN: JAMES A. BROWN, JR.
   PO BOX 5599
   FLORENCE, SC 29502

   9590 9402 5061 9092 8992 75

2. Article Number (Transfer from service label)

   7021 0350 0000 8422 7311

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
   ☐ Adult Signature
   ☐ Adult Signature Restricted Delivery
   ☒ Certified Mail®
   ☐ Certified Mail Restricted Delivery
   ☐ Collect on Delivery
   ☐ Collect on Delivery Restricted Delivery
   ☐ Insured Mail
   ☐ Insured Mail Restricted Delivery (over $500)
   ☐ Priority Mail Express®
   ☐ Registered Mail™
   ☐ Registered Mail Restricted Delivery
   ☐ Return Receipt for Merchandise
   ☐ Signature Confirmation™
   ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

# EXHIBIT 3

**From:** Tom Godfrey <tgodfrey@synergipartners.com>
**Sent:** Saturday, April 2, 2022 7:01 AM
**To:** Keith Kinard <Keith@primesteakconcepts.com>
**Cc:** Wells Beacham <wbeacham@synergipartners.com>
**Subject:** RE: Termination letter

Good morning Keith,

I hope all is well with you.

Thank you for your email. I want to acknowledge receipt of your message and let you know that the appropriate individuals at Synergi have received a copy. Synergi is committed to your success, as well as our contractual obligation to deliver your tax credit package. Due to this obligation we will continue working towards completing all work in process and deliver your tax credit package upon completion, per the terms of our agreement. At that time, we will work with you to schedule a review call to answer any questions you may have.

Thank you,



**Tom Godfrey**
National Sales Manager
Employer Tax Incentives

C: (678) 467-0700

www.synergipartners.com

**Confidentiality notice:** This email contains confidential and/or private information. If you received this email in error, please delete and notify sender.

# EXHIBIT 4

**From:** Keith Kinard
**Sent:** Monday, April 4, 2022 2:49 PM
**To:** Tom Godfrey <tgodfrey@synergipartners.com>
**Cc:** Strunk, Sarah <SStrunk@fennemorelaw.com>
**Subject:** RE: Termination letter

Tom, You have been advised to stop work now. We will not pay for any further work. Thank you.


**Keith Kinard – CFO**
Prime Steak Concepts
-Steak 48 (Houston, Chicago, Philadelphia, Charlotte)
-Steak 44 (Phoenix)
-Ocean 44 (Scottsdale)
-Dominick's Steakhouse (Scottsdale)
7345 E Acoma Drive, Ste 101
Scottsdale, AZ 85260
Office – (623)-264-8371
keith@primesteakconcepts.com
We've Moved – Our new address is:
7345 E Acoma Drive, Ste 101, Scottsdale, AZ 85260
Please update your records/contact information to our new address and my direct office phone number has also changed

Confidentiality Notice: The above e-mail message (including any attachments) contains information that may be confidential, or constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.